IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Gray Helms Jackson, | ) | Civil Action No. 8:14-cv-04906-RMG-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## **PROCEDURAL HISTORY**

On March 29, 2011, and March 31, 2011, respectively, Plaintiff filed applications for DIB and SSI, alleging disability beginning February 25, 2011. [R. 192–201.] The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 68–79, 82–109.] Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on June 20, 2013, ALJ Clinton C. Hicks conducted a hearing on Plaintiff's claims. [R. 35–65.]

On September 13, 2013, the ALJ issued his decision, finding Plaintiff not disabled. [R. 18–28.] At Step 1[3], the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on December 31, 2014, and had not engaged in substantial gainful activity since February 25, 2011, the alleged onset date [R. 20, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: viral hepatitis; hepatic encephalopathy; grade II, stage II to III septal fibrosis; osteoarthritis of the bilateral knees, status-post right total knee arthroplasty; chronic gastroesophageal reflux disease; atrial fibrillation status-post pacemaker implantation; sick sinus syndrome and chronic hypertension. [R. 20, Finding 3.] The ALJ also found Plaintiff had the following non-severe impairments: other conditions mentioned in the claimant's medical records; and claimant's medically determinable mental impairments of generalized anxiety disorder, major depressive disorder, and bipolar disorder. [*Id*. at 21.]

At Step 3, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. [R. 23,

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Finding 4.] The ALJ specifically considered Listings 1.00, 2.00, 4.00, 5.00, 14.00, and specifically considered the additional effects of the claimant's obesity under Social Security Ruling 02-1p. [*Id*.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be precluded from squatting and climbing ladders, ropes or scaffolds; would be limited to occasional climbing ramps and stairs and would require the ability to sit and stand at will.

[R. 23, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was able to perform his past relevant work as a loan officer. [R. 28, Finding 6.] Thus, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, from February 25, 2011, through the date of the decision, nor was he entitled to SSI based on his March 31, 2011, application. [R. 28.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied review on November 13, 2014. [R. 1–6.] Plaintiff commenced an action for judicial review in this Court on December 31, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains multiple legal errors warranting the reversal and remand of the case. [*See* Doc. 8.] Specifically, Plaintiff contends the ALJ:

1.  erred by failing to find Plaintiff's mental impairments severe and by discounting the opinions of Plaintiff's treating physicians and the state

3

agency physician based solely on Plaintiff's activities of daily living [*id*. at 8-13];

2. erred by improperly discounting Plaintiff's credibility with respect to his testimony regarding the limitations associated with his psychiatric symptoms [*id*. at 14–15]; and,

3. erred by finding Plaintiff could return to his past work without any evidence that his job had a sit/stand option [*id*. at 15–16].

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act. [*See* Doc. 9.] Specifically, the Commissioner contends the ALJ:

1. appropriately determined that Plaintiff did not have a severe mental impairment and properly weighed the medical evidence related to his mental illness [*id*. at 11–17];

2. performed a proper credibility analysis and reasonably discounted Plaintiff's subjective complaints regarding his psychiatric symptoms and resulting limitations [*id*. at 18–21]; and,

3. complied with applicable regulations and rulings in making his Step 4 determination that Plaintiff could return to his past work [*id*. at 21–23].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than

4

a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

5

U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I. The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

---

2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out

in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

**B.     *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921.   When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.   42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).   The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").   If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."   42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5] 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

13

support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a

consultative examination is not required when there is sufficient medical evidence to make

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the

regulations, however, the ALJ may determine that a consultative examination or other

medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he

furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain

16

> is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Mental Impairment**

Plaintiff argues that the ALJ erred in concluding that Plaintiff's mental impairment was not severe.  [Doc. 8 at 9.]  Plaintiff also argues that the ALJ relied solely on his lay judgement in finding that Plaintiff's activities of daily living negated the opinions of mental health professionals who found that he had mental limitations.  [*Id*.]  Plaintiff contends the ALJ made conclusory findings in stating that the opinion of the treating physician Dr. Brian Mika of Piedmont Behavioral Medicine Associates ("Dr. Mika") was inconsistent with his treatment records without any further explanation of the purported inconsistencies.  [*Id*. at 10.]

The Commissioner contends the ALJ properly determined that Plaintiff's medically determinable mental impairments of generalized anxiety disorder, major depressive disorder, and bipolar disorder were non-severe because they resolved with no credible allegations of continued limitations and they produced only minor or infrequent limitations.  [Doc. 9 at 12.] The Commissioner also points out that Dr. Mika completed a checkbox opinion in February 2013 indicating that Plaintiff had marked mental functional limitations after seeing Plaintiff on only two occasions with rather benign findings.  [*Id*. at 15–16.]

The Court agrees with Plaintiff that substantial evidence does not support the ALJ's determination that Plaintiff's mental impairment was non-severe.

### *Relevant Medical Evidence*[8]

---

[8]Plaintiff's objections to the ALJ's decision appear to be directed to the ALJ's findings with respect to Plaintiff's mental limitations.  Thus, the discussion of relevant medical evidence will be directed to the evidence of record related to Plaintiff's mental impairment.

Plaintiff alleges disability due to coronary artery disease, cardiac arrythmia, pacemaker, chronic hepetitis C, cirrochis of liver, bipolar and panic disorder, depression, total knee replacement, and alcoholism.  [*See* R. 68.]

On November 1, 2011, Plaintiff presented to Dr. Joseph P. Goldsmith, ED.D ("Dr. Goldsmith") for a mental status examination, on referral by Laurie Hearne, with reported problems of total knee replacement ("TKA"), coronary artery disease, arrhythmia, alcoholism, liver disease, and bipolar disease.  [R. 330.]  Plaintiff advised that his mental illness dated back to 1980 when he started having panic attacks. [*Id*.] Plaintiff advised that he had been to the emergency room on a number of occasions for panic attacks but had never been to a psychiatric hospital. [*Id*.]  Paxil did stop his panic attacks.  [*Id*.]

Plaintiff relayed ongoing problems with dizziness, blurred vision, anxiety and depression on a daily basis.  [*Id*.]  He advised that he sleeps 14–15 hours daily and can not function due to his hepatitis and medication, which tires him out.  [*Id*.] Plaintiff indicated that he had been arrested in the past: 5 times for DUI; twice for possession of drugs; and once for assault, disturbing the peace, and damaging property.  [*Id*.]

Plaintiff graduated from the University of North Carolina with a B.A. in History and Political Science.  [*Id*.]  He was last employed at Lowe's until he was terminated on February 26, 2011, after having excessive write-ups for his inability to perform and interact. [R. 331.]  Plaintiff admitted he missed work, was unable to perform certain jobs, and took unauthorized breaks, all appearing to be alcohol related.  [*Id*.]

With respect to activities of daily living ("ADL"), Plaintiff stated that he typically took his son to school, did household duties as much as he could, came back home and slept at 11:30, checked his mail and watched TV.  [*Id*.] Plaintiff did not have friends or relatives

visit, had no group activities, and did not go to Sunday school, church or anything like that. [*Id*.]  Plaintiff relayed that his father was physically abusive to the point of leaving cuts/bruises, leaving him with nightmares as a child which appeared to be PTSD in nature; and he was sexually abused by a neighbor a couple years older than him, which he never reported.  [*Id*.]

Plaintiff claimed he began drinking at 13 and has "used all drugs out there." [*Id*.] He also claimed he last used drugs 10 years prior and had his last drink eight weeks prior to his November 1, 2011, visit with Dr. Goldsmith due to his diagnosis of stage III liver disease.  [*Id*.]  Dr. Goldsmith diagnosed Plaintiff with bipolar disorder, not otherwise specified, and alcohol dependence in remission.  [*Id*.]  Dr. Goldsmith indicated that he was not sure Plaintiff could stay abstinent, that he did not think he could handle funds, and that, while his reasoning ability is excellent, he would have a difficult time making occupational, personal, and social adjustments of dealing with the world of work.  [R. 332.]

On November 21, 2012, Plaintiff presented to Dr. Mika on referral from Dr. Larry H. Pennington with Digestive Disease Associates of York Co. [R. 380.]  After taking Plaintiff's medical history, Dr. Mika completed a mental status exam and found as follows:

* appropriate dress, grooming and hygiene;
* normal gait and station
* normal psychomotor
* cooperative attitude
* normal rate of speech
* depressed and anxious mood
* congruent affect
* logical and coherent thought processes
* no hallucinations, delusions, obsessions or homicidal thoughts
* insight, memory, attention/concentration, expressive/receptive language, intelligence/fund of knowledge and judgment intact and oriented to person, place and time

20

[R. 382.]  On the same day, Dr. Mika completed a Psychiatric/Psychological Impairment

Questionnaire based on the clincal exam finding as follows:

* poor memory (1/3 recall)
* appetite disturbance with weight change;
* sleep disturbance
* mood disturbance
* substance dependence
* recurrent panic attacks
* anhedonia or pervasive loss of interest
* feelings of guilt/worthlessness
* social withdrawal or isolation
* decreased energy
* persistent irrational fears
* generalized persistent anxiety

[R. 409.] Dr. Mika described Plaintiff's symptoms as equally severe and that his symptoms

were reasonably consistent with Plaintiff's physical and /or emotional impairments. [R.

410.]  Dr. Mika also assessed Plaintiff's mental activities as follows:

* No evidence of limitation in Plaintiff's ability to

  * get along with co-workers or peers without distracting them or exhibiting behavioral extremes;

* Mildly limited (*e.g. does not significantly affect Plaintiff's ability to perform the activity*) in Plaintiff's ability to

  * understand and to remember one or two step instructions
  * carry out simple one or two step instructions
  * sustain ordinary routine without supervision
  * make simple work related decisions
  * ask simple questions or request assistance
  * accept instructions and respond appropriately to criticism from supervisors
  * maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness

* Moderately limited (*significantly affects but does not totally preclude Plaintiff's ability to perform the activity*) in Plaintiff's ability to

  * remember locations and work-like procedures

21

* ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances
* ability to work in coordination with or proximity to others without being distracted by them
* interact appropriately with the general public
* respond appropriately to changes in the work setting
* to be aware of normal hazards and take appropriate precautions
* to set realistic goals or make plans independently

* Markedly limited (*effectively precludes Plaintiff from performing the activity in a meaningful manner*) in Plaintiff's ability to

* understand and remember detailed instructions
* carry out detailed instructions
* maintain attention and concentration for extended periods
* complete a normal work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
* set realistic goals or make plans independently

[R. 410– 13.]

Dr. Mika concluded that Plaintiff experienced episodes of deterioration or decompensation in work or work like setting which caused him to withdraw from that situation and/or experience exacerbation of symptoms.[9]  [R. 413.]  Dr. Mika opined that Plaintiff's symptoms would last about six months with therapy; that his psychiatric condition does not exacerbate his pain or other physical symptoms; that Plaintiff is capable of "low stress" work; and that he will have good and bad days due to his persistent symptoms.  [R. 414.]  Dr. Mika indicated Plaintiff's symptoms related back to his first evaluation on November 21, 2012, and that he would be able to manage his own benefits.[10]  [R. 415.]

---

[9]Dr. Mika's explanation for this response is illegible as are most of the other supporting notes he provides.  At most, the majority of Dr. Mika's notes are extremely hard to read. [*See* R. 413, 415 and 380–84.]

[10]A review of Dr. Mika's treatment notes dated November 21, 2012, and February 8, 2013, indicate that Plaintiff's mental status exams generally showed him as depressed and

Medical evidence from Lisa Fowler ("Fowler"), Licensed Clinical Social Worker of Palmetto Counseling Consultants dated January 2 and January 23, 2013, document that, on mental status examination, Plaintiff had fair eye contact; normal gait and station; normal appearance, attitude and behavior; normal psychomotor and attitude; anxious mood and sad affect; normal speech and thought process; unremarkable thought process; and he was oriented to day, date and month. [*See* R. 387, 391.] Treatment notes also indicate that Plaintiff's attention span was distracted and his judgment, insight and impulse control were fair. [*Id*.] Fowler, in summarizing the negative coping mechanisms or barriers to achieving a proposed treatment plan, found that Plaintiff lacked adaptive coping skills; had an inadequate social support system; had a history of non-compliance with treatment; and had co-morbid medical illness. [*See* R. 388, 392.]

### Plaintiff's Testimony

In his disability report, Plaintiff indicated that he was able to take care of his personal needs at a slower rate and that his daily activities are limited due to his ongoing conditions. [R. 267.]  With respect to ADL, Plaintiff testified that he is hardly able to do anything around the house other than make a bed, or something similar; does not grocery shop but does like to cut out coupons once a week; and can drive.   [R. 52–53.]  Plaintiff also testified that during an average day he watches television and listens to the radio; lets the dogs out in the back yard; has no hobbies to occupy his time; does not attend social functions like church.  [R. 54–55 .]

---

anxious with congruent affect; logical and coherent in thought processes; no hallucinations, delusions, obsessions or suicidal thoughts; and intact insight, judgment, memory, attention/concentration, expressive/receptive language/ and intelligence/fund of knowledge. [*See* R. 382, 384.]

### *ALJ's Assessment of Plaintiff's Mental Impairment*

The ALJ, upon assessing Plaintiff's mental impairments of generalized anxiety disorder, major depressive disorder, and bipolar disorder, determined that these impairments, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were, therefore, non-severe. [R. 21.] In considering the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the ALJ determined that Plaintiff had mild limitations in his ADL; mild limitations in social functioning; mild limitations in concentration, persistence or pace; and no episodes of decompensation for an extended duration. [R. 21.]

In evaluating the medical opinion evidence of record related to Plaintiff's mental impairment, the ALJ considered the consultative evaluation of Dr. Goldsmith and assessed it with little weight finding that:

> On November 1, 2011, the claimant was consultatively evaluated Joseph Goldsmith, Ed.D. The claimant reported a history of panic attacks and depression adding he had taken Paxil in the past, which controlled his panic attacks. He stated he could not function due to his hepatitis adding his medication made him tired. The claimant reported he had been arrested in the past for five DUIs, two possession of drug offenses, one assault, disturbing the peace, and damaging property. On said date, the claimant was oriented to place and person and his insight and judgment appeared to be good. He was able to remember three items after one minute and two items after five minutes. He was able to spell the word "world" both forward and backwards. Logical memory indicates he was able to remember 9of14 information units. The Emery Test for Syntactic Complexity indicated he was able to understand syntax. Dr. Goldsmith assessed the claimant with bipolar disorder not otherwise specified and alcohol dependence in remission. Dr. Goldsmith opined the claimant's reasoning ability was excellent but stated that he thought the claimant

24

would have a difficult time making occupational, personal, and social adjustments of dealing with the world of work (Exhibit 9F). Dr. Goldsmith did not identify the basis for his opinion regarding the claimant's ability to make occupational, personal, and social adjustments. As such, I find it is not supported by the record and is overly broad.

[R. 21.]

The ALJ also considered the opinion of Plaintiff's treating psychiatrist Dr. Mika and assessed his opinion with little weight finding that:

> [On November 21, 2012, Plaintiff's] Mental status examination revealed anxious and depressed mood and congruent and constricted affect but was within normal limits otherwise. Dr. Mika assessed the claimant with generalized anxiety disorder, major depressive disorder and polysubstance abuse in remission. His Global Assessment of Functioning score was assessed at 60. The medical evidence of record shows the claimant did not return until February 8, 2013, at which his psychotropic medications were adjusted (Exhibit 17F). On February 8, 2013, Dr. Mika completed a psychiatric impairment questionnaire wherein he stated the claimant suffered from anhedonia, appetite disturbance with weight change, sleep disturbance, decreased energy, feelings of guilt/worthlessness, former substance dependence, poor memory with 1/3 recall, social withdrawal/isolation, persistent irrational fears, recurrent panic attacks, mood disturbance, and generalized persistent anxiety. Dr. Mika identified multiple areas of marked limitation regarding concentration, persistence, and pace including Mr. Jackson's ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Mika also noted marked limitation of Mr. Jackson's ability to adapt to change as evidenced by his markedly restricted ability to travel to unfamiliar places or use public transportation. He noted that Mr. Jackson suffered from episodes of deterioration or decompensation in work-like settings due to poor stress tolerance and coping skills. Dr. Mika stated that Mr. Jackson was no longer able to manage or pay bills or do other tasks

25

(Exhibit 23F). I find Dr. Mika's opinion is inconsistent with the claimant's treatment records and activities of daily living.

[R. 22.]

Further, the ALJ considered the opinion of State agency consultant Edward Waller, Ph.D. and, like wise gave his opinion little weight explaining that:

> On November 22, 2011, Edward Waller, Ph.D., a State agency consultant thoroughly reviewed the claimant's case and opined the claimant had a mild impairment in activities of daily living and moderate impairment in maintaining social functioning and in maintaining concentration, persistence and pace. Dr. Waller opined the claimant could understand and remember short and simple instructions, could perform simple tasks without special supervision, could maintain a regular work schedule but might miss an occasional workday due to depression, would perform better in a job setting that did not require ongoing interaction with the public, could make simple work related decisions, request assistance from others, and use available transportation (Exhibit 5A). I find Dr. Waller's opinion is inconsistent with the claimant's treatment records as well as his reported activities of daily living, including taking his son to school, checking his mail, watching television, preparing meals and shopping in stores, by phone, by mail and by computer (Exhibits 8F, 9F).

[R. 22.]

### *Discussion*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant

26

and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinions based on the factors listed in 20 C.F.R. § 404.1527(c).

In undertaking review of the ALJ's treatment of Plaintiff's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. A review of the ALJ's decision, however, fails to show that the ALJ reviewed the medical opinions of Plaintiff's treating physicians in accordance with the factors in 20 C.F.R. § 404.1527(c). In fact, the ALJ fails to address most of these factors set forth in the Treating Physician Rule.

The ALJ's rejection of the opinions of Dr. Mika, Dr. Goldsmith, and Dr. Waller appears to be primarily based on the premise that Plaintiff's relatively stable condition in the home setting and ability to perform certain limited ADL were inconsistent with the doctors' opinions that Plaintiff's psychiatric condition rendered him incapable of handling the social interaction and adjustments of work setting. The ALJ also provided a cursory conclusion that Dr. Mika's medical opinion was not supported by his treatment notes, but provided no further discussion with respect to the treatment notes. Nevertheless, even the State agency chart reviewers recognized that Plaintiff's psychiatric condition significantly impacted his social functioning and persistence and pace in the work place [*see* R. 93], notwithstanding his relatively stable condition and performance of ADL in the home setting. The premise of the ALJ—that Plaintiff's relative stability at home and limited ADL rendered

27

the opinions of Drs. Mika, Goldsmith, and Waller that Plaintiff had extreme impairments in the work setting unworthy of significant weight and consideration—substituted the ALJ's opinion for those of Plaintiff's treating, examining and non-examining medical sources. These medical opinions of record regarding the impact of Plaintiff's mental disease process on his ability to function in the work place draw upon the doctors' special training and experience and may not be summarily rejected by the ALJ on his personal belief that a bipolar patient's relative stability at home is inconsistent with the opinion that a patient cannot function adequately in the work setting. *See Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) (explaining the ALJ may not substitute expertise that he did not possess in a filed of medicine for the opinion of a physician regarding the claimant's functional limitations). Clearly, the ALJ found Plaintiff's mental impairment to be irrelevant even in the face of the medical evidence, and substantial evidence in the record does not support the ALJ's decision.

Additionally, the Court finds it bewildering that the evidence of record directed to Plaintiff's mental impairment resulted in no associated limitation in Plaintiff's RFC. Thus, the ALJ's Step 2 error was not harmless because the RFC determination did not sufficiently account for Plaintiff's mental impairment. *See Sawyer v. Colvin*, 995 F. Supp. 2d 496, 509 (D.S.C. Feb. 3, 2014) (noting that there is no reversible error where the ALJ erred by finding an impairment to be non-severe at Step 2 provided the ALJ considered that impairment in subsequent steps; here the ALJ considered the disorders at issue in determining the RFC).

This misapplication of the Treating Physician Rule in this case mandates reversal of the Commissioner's decision and remand for a proper evaluation of the medical opinions

contained in the record.  On remand, the opinions of Drs. Mika, Goldsmith, and Waller should be explicitly weighed in light of the treatment history, including the length and extent of treatment, the area of specialization, and other factors set forth in the Treating Physician Rule, mindful of the general deference to be afforded the opinions of treating physicians, as well as in the light of the general deference given examiners when weighed against the opinions of non-examining experts.  The ALJ should likewise address other evidence of record, including opinions from non-medical sources such as Lisa Fowler, clinical social worker, who also found Plaintiff lacked adaptive coping skills.  [*See* R. 388.]  Any rejection of these opinions should be based on appropriate evidence in the record and in accord with the Treating Physician Rule and not simply the substitution of the opinion of the ALJ for that of the treating and examining medical sources.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider the medical opinion evidence in accordance with the Treating Physician Rule is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

**IT IS SO RECOMMENDED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 26, 2016
Greenville, South Carolina